[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-15321
Non-Argument Calendar

_____

D.C. Docket No. 2:15-cv-00043-WCO

METROPOLITAN LIFE INSURANCE COMPANY,

Plaintiff-Appellee,

versus

DEVIN LANIER WADDELL,
as administrator of the estate of Lanier Gene Waddell,

Defendant-Appellant,

ANN MARSHALL WADDELL,
ANNE MARIE BISHOP,

Defendants-Appellees,

ROBERT FINK, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 6, 2017)

Before HULL, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

This case involves a dispute about who is entitled to death benefits under Lanier Gene Waddell's life insurance policies. Both Lanier Waddell's son and the conservator for his incapacitated wife claim entitlement to the benefits. Metropolitan Life Insurance Company ("MetLife") brought this interpleader action to resolve the conflicting claims. The district court granted summary judgment in favor of the wife and her conservator. After thorough review of the briefs and the record, we affirm.

## I.  FACTUAL BACKGROUND

Prior to his death in December 2013, Lanier Waddell was married to Ann Marshall Waddell. In 2003, Ann Waddell was in an accident that left her incapacitated with a permanent traumatic brain injury. At the time of her husband's death, Ann Waddell's conservator was Anne Marie Bishop.

Devin Waddell is Lanier's son and Ann's stepson. Devin Waddell is also the administrator of his father's estate.

Lanier Waddell was a retired employee of Alcatel-Lucent USA, Inc. ("Alcatel") as a management employee. As part of his employment with Alcatel, Lanier Waddell participated in two life insurance plans: the Alcatel-Lucent Group Life Insurance Plan for Retired Employees (the "Basic Plan") and the Alcatel-

Lucent Group Term Life Insurance Plan (the "Term Plan") (collectively, the "Plans"). These Plans were funded by group insurance policies issued to Alcatel by MetLife. At the time of his retirement, Lanier Waddell was entitled to coverage in the amount of $60,000 under each Plan, or $120,000 in total.

## A. The Terms of the Plans

The two Plans both explicitly state that they were intended to be "employee welfare benefit plan[s]" under the Employee Retirement Income Security Act of 1974 ("ERISA"). Further, the Plans "shall be governed by and administered under ERISA and . . . [t]he Plan benefits which are provided by or administered by the Insurance Company [MetLife] under an Insurance Contract shall be governed by ERISA."

The Plans vested the Plan Administrator with "specific discretionary powers, duties and authorities" and gave the Plan Administrator the "discretion to delegate to any other person or persons (including, but not limited to, the Insurance Company) authority to act on behalf of the Plan Administrator, including, but not limited to, the authority to make any determination or to sign checks or other instruments incidental to the operation of the Plan for which the Plan Administrator is responsible." The Plans named the employer as the Plan Administrator and named MetLife as the Insurance Company.

3

The policy documents for both Plans explain that "Beneficiary" means "the person or persons you choose to receive any benefit payable because of your death." The policies define "You" to mean the "Covered Person named on the Certificate," here, Lanier Waddell. Additionally, the insured may designate his beneficiary as follows: "You make the choice in Writing on a form approved by [MetLife]. This form must be filed with the records for This Plan." The policies also provide:

> You may change the Beneficiary at any time by filing a new form with us. You do not need the consent of the Beneficiary to make a change. When we receive a form changing the Beneficiary, the change will take effect as of the date you Signed it. The change of Beneficiary will take effect even if you are not alive when it is received.

Both policies also have provisions governing what happens if the insured dies without designating a beneficiary. The policy documents for the Plans state that:

> If there is no Beneficiary at your death for any amount of benefits payable because of your death, that amount will be paid to one or more of the following persons who are related to you and who survive you:
>
> (a) Spouse;
> (b) child(ren);
> (c) parents;
> (d) brother and sister.
>
> However, we may instead pay all or part of that amount to your estate.

4

There is also a Summary Plan Description for both Plans (the "SPD") that describes the "key features" of both Plans "in easy-to-understand terms." However, it is the Plan documents and insurance contracts that are controlling and "determine [the insured's] rights and the rights of [the insured's] dependents and/or beneficiaries" under the Plans.

The SPD states that insureds may name one or more beneficiaries. Further, after the insured's retirement, the beneficiary or beneficiaries "are the same as those designated while you were actively employed." According to the SPD, an insured could change his beneficiary at any time. To do so, the insured must "contact the insurer . . . for the appropriate form. After you complete the form, return it to the insurer. Your change takes effect on the date you sign the form, even if you are not alive when the insurer receives it."

According to the SPD, if the insured did not designate a beneficiary, benefit payments would be made to the insured's:

> next surviving relative(s) and considered in this order:
> - your spouse or domestic partner,
> - your children,
> - your parents,
> - your brother and sister.
>
> Notwithstanding the foregoing, the insurer may pay all or part of such amount to your estate.

5

The SPD also clearly grants broad discretionary authority to the Plan Administrator:

The Plan Administrator has the full discretionary authority and power to control and manage all aspects of the Life Insurance Plans, to determine eligibility for Life Insurance Plan benefits, to interpret and construe the terms and provisions of the Life Insurance Plans, to determine questions of fact and law, [and] to direct disbursements . . . .

The Plan Administrator may allocate or delegate its responsibilities for the administration of the plan to others and employ others to carry out or render advice with respect to its responsibilities under each of the Life Insurance Plans, including the discretionary authority to interpret and construe the terms of the Life Insurance Plans, to direct disbursements, and to determine eligibility for Life Insurance Plan benefits. . . . The Plan Administrator has delegated its responsibility to review all other claims and appeals related to benefits [not related to participation eligibility] to the insurer.

## B.    Lanier Waddell's Death

On October 12, 1983, Lanier Waddell designated Ann Waddell, his wife, as the beneficiary of the Basic Plan. On December 23, 2013, Lanier Waddell died unexpectedly of a sudden heart attack. At the time of his death, there was no beneficiary on file under the Term Plan.

## C.    MetLife Determines that Ann Waddell is the Beneficiary of Both Plans

On January 6, 2014, MetLife determined that, per the 1983 designation, Ann Waddell was the sole beneficiary of the Basic Plan. MetLife also determined that, because there was no beneficiary designation on file under the Term Plan, Ann Waddell was the first in line for benefits under that Plan as the insured's surviving spouse.

6

On January 10, 2014, Devin Waddell called MetLife. According to MetLife's notes from that call, Devin Waddell stated that Ann was incapacitated and had a conservator. Additionally, "he said there was a change of bene[ficiary] form sent to the ER [employer]. Told him I did not see that." Upon learning that Ann Waddell was incapacitated and had a conservator, MetLife sent the forms to Ann's conservator, Anne Marie Bishop, to complete in order for MetLife to pay benefits.

In February 2014, Devin Waddell filed a claim for benefits. On March 19, 2014, MetLife sent a letter to Clyde Morris ("attorney Morris"), Devin Waddell's attorney, stating that "neither [Devin] nor the Estate are named beneficiary of the Basic Life coverage." On March 26, 2014, attorney Morris responded, stating that Devin Waddell was the "legally authorized Attorney-in-Fact for Ann Marshall Waddell" and demanded that "payment of all policy benefits be made to the Estate of Lanier Gene Waddell."

On April 3, 2014, MetLife informed attorney Morris that, according to its records, Devin Waddell "is not the named beneficiary for the basic life insurance plan or the first in line for the group universal life insurance policy." What's more, "the Estate of Lanier Waddell is not payable on either of these claims." The April 3, 2014 letter continued: "Therefore, based on the record before MetLife, we must deny your client's claims as both an individual and as the representative of the

7

Estate of Lanier Waddell."  The April 3 letter informed Devin Waddell of his right to appeal the decision and submit additional information.

**D.      Devin Waddell Presents MetLife with Change-of-Beneficiary Forms**

In a letter dated April 29, 2014, Devin Waddell, through attorney Morris, appealed this decision.  Devin Waddell enclosed with his appeal a "Group Universal Life Insurance Beneficiary Designation" form and a "Group Term Life Insurance Beneficiary Designation" form, both of which designated Devin Waddell as the 100% primary beneficiary.  The forms listed the "Lanier Gene Waddell Revocable Living Trust" (of which Devin Waddell was the trustee) as the 100% contingent beneficiary.  Both forms were purportedly signed by Lanier Waddell on December 12, 2013, eleven days before his death.  In his April 29, 2014 letter, attorney Morris pointed to the terms contained in the Plan documents and the SPD that "Lanier Waddell's beneficiary designation becomes effective upon receipt of the properly completed form, even if he is not alive when the insurer receives the form."

**E.      MetLife Again Denies Devin Waddell's Claim for Benefits**

On May 5, 2014, MetLife checked its internal records and confirmed that this was the first time it had received the change-of-beneficiary forms listing Devin Waddell as the sole beneficiary.

On May 8, 2014,[1] MetLife upheld its decision to deny Devin Waddell's claim.  MetLife explained that it did so after "re-examin[ing] the entire claim file, including examination of any additional material and information provided with your request for appeal."  After outlining the pertinent provisions of both Plans, MetLife explained why it had previously denied Devin Waddell's claim:

> As explained in the denial letter, [Lanier Waddell] completed a beneficiary designation form dated May 22, 1981[2] for the Group Basic Life Insurance Plan benefits.  However, this beneficiary form does not name your client, as an individual nor as the estate representative of Lanier Waddell as the beneficiary of record.
>
> Additionally, [Lanier Waddell] did not designate a beneficiary on file with the policy for the Group Universal Life Insurance policy benefits.  When there is no eligible, designated beneficiary on file with the policy, benefits are paid in accordance with the line of succession provision in the policy.
>
> According to our records, your client is not the named beneficiary for the basic life insurance plan or the first in line for the group universal life insurance policy.  Also, please be advised, the Estate of Lanier Waddell is not payable on either of these claims.  As such, you[r] client's claim was denied on April 3, 2014.

MetLife then proceeded to address the purported change-of-beneficiary forms and explained why those forms were not "a valid designation":

> You believe that your client should be payable based on a beneficiary designation form dated December 12, 2013.  You contend

---

[1] The letter bears a date of March 8, 2014, but the parties agree that the correct date of this letter is May 8, 2014.

[2] This appears to be the date on which Lanier Waddell enrolled his eligible dependent in the Dependent Group Life Insurance Plan.  MetLife and the parties agree that he designated his wife Ann as the beneficiary on the Basic Plan on October 12, 1983.

9

per the plan provisions the designation should be acceptable as it is now received.  This designation was not on file with the firm as required and therefore is not a valid designation.  <u>If the insured employee or retiree provides or sends the designation it would be accepted if received.  In this instance it is not the insured participant who is sending the beneficiary designation.  It is being provided by another party, you, post death.</u>  The intent of such a provision is for when an insured sends or mails such a designation and while in transit their death occurs.  That is not the case here and the provision you are relying upon does not apply.

Therefore, based on the records before MetLife, we must uphold the denial of your client's claims both as an individual and as the representative of the Estate of Lanier Waddell.

(emphasis added).

In accordance with its determination, MetLife attempted to pay the benefits to Ann Waddell's conservator.  MetLife was unable to do so because Devin Waddell was granted a temporary restraining order preventing payment of benefits in conjunction with a lawsuit in Georgia state court seeking an award of benefits to the estate.  That Georgia state case was ultimately dismissed so that MetLife could file the instant interpleader action.

## F.    MetLife Files an Interpleader Complaint and the Parties Move for Summary Judgment

On March 11, 2015, MetLife filed an interpleader action in the district court to resolve the conflicting claims to Lanier Waddell's death benefits.  MetLife therefore requested that it be allowed to deposit the death benefits into the court's registry and allow the district court to decide who should receive the benefits.

10

Shortly thereafter, the district court accepted MetLife's payment of $120,000 worth of benefits, plus interest, into the court's registry.

On December 28, 2015, Ann Waddell and conservator Bishop filed their motions for summary judgment.  On January 7, 2016, Devin Waddell filed his motion for summary judgment.  Along with his motion, Devin Waddell submitted multiple pieces of evidence outside the administrative record.

## G.    Evidence Presented Outside the Administrative Record

### 1.    Devin Waddell's Declaration

Devin Waddell submitted his own written declaration, stating that he found the new change-of-beneficiary forms in his father's papers after his death.  Also included among those papers was an unsigned copy of Lanier Waddell's Last Will and Testament (the "Will") and a signed original copy of The Lanier Gene Waddell Revocable Living Trust (the "RLT").  The Will passed Lanier Waddell's assets through the RLT.  Devin Waddell and Leisa Michelle Hardage (a woman Lanier Waddell had considered and treated as his daughter) were the named beneficiaries of the RLT.  Devin Waddell stated that he never found his father's original Will.

Devin Waddell admitted to contacting MetLife in early January 2014 "to inquire about the insurance policies" and sought the assistance of attorney Morris when MetLife "refused to disclose to [Devin] the benefit amounts or beneficiaries

of the policies." Devin Waddell states in his declaration that his father's intention to name him sole beneficiary under the Plans was evidenced by his "having obtained the necessary forms from MetLife, filled them out completely, and signed them prior to his death."

In addition, Devin Waddell pointed to three sets of facts in further support of his father's intentions. First, Ann Waddell had more than $91,000 available to her in the year after her husband's death "from a structured settlement annuity" funded from multiple sources. Second, following a sale of Lanier Waddell's house in May 2015, Ann Waddell received $67,508.84 for her one-half interest in the house. Third, Devin Waddell stated that, after payment of his father's creditors, last expenses, and attorneys' fees, he expected to inherit nothing from his father's estate.

2.    J. Kevin Tharpe's Declaration

J. Kevin Tharpe was Lanier Waddell's attorney from 2001 until 2013 and helped Lanier Waddell with estate planning. According to Tharpe, because Ann had "a multitude of financial resources" for her care after his death, Lanier Waddell, when planning his estate in 2007, wanted to pass all of his remaining assets to Devin Waddell and Leisa Hardage. As part of that plan, Tharpe drafted the Will and the RLT.

12

On March 8, 2012, Lanier Waddell asked Tharpe to assist him in designating the RLT as the beneficiary of his MetLife life insurance proceeds. Tharpe stated that his "goal, which was consistent with [Lanier Waddell's] wishes, was to ensure that the life insurance proceeds would not go to Ann." Tharpe advised his client to obtain the necessary forms from MetLife.

3.    Carolyn Davis's Declaration

Carolyn Davis worked for seven or eight years in Lanier Waddell's home as Ann Waddell's caretaker. According to Davis, Lanier Waddell told her before he died that he was changing his life insurance beneficiary to Devin Waddell, that Lanier had hired an attorney, Tharpe, to do so, but that Tharpe "hadn't done it." Davis further stated that "[a] couple of weeks before he died, [she] heard [Lanier Waddell] talking to someone on the phone and telling them that he wanted to change the beneficiaries on his policies." Davis saw Lanier sign the change-of-beneficiary forms that Devin Waddell later submitted to MetLife. According to Davis:

> I saw [Lanier Waddell] filling them out, and a little while later that day I noticed they were on a table near the fax machine. [Lanier Waddell] was showing a lot of stress at that time . . . . I was not sure whether he had already sent the forms or not, so I asked him if he was going to send them and he said, "Yes, right now." Then he picked them up and moved over toward the fax machine, which is how he usually sent papers like that.
>
> A few days later I saw the same papers sitting on a table again. . . . Because he was under so much stress, I wanted to be sure he

13

hadn't forgotten to send the papers, so I asked him if he has sent them and he said, "Yes." Then I asked if he wanted me to put them in the mail and he said "I've got it" which I took to mean that he had done whatever was needed to get them to where they needed to go. Because I had seen him taking them to the fax machine, I got the impression he had faxed them.

On the Thursday before he died, [while driving home together, Lanier Waddell told Davis that] "I'm going to call those insurance people and see if they got those papers." I found [Lanier Waddell] dead in his home the following Monday morning when I arrived for work.

4.    Conservator Bishop's Declaration

In rebuttal, Bishop (Ann Waddell's conservator) submitted her own declaration. According to Bishop, she found Lanier Waddell "to be well above average in his technological capabilities, competent and able-bodied up until he passed away on December 23, 2013." Further, in the month of December 2013, Lanier Waddell performed multiple tasks: he mailed items to Bishop (including a CD that he had made), wrote checks, scanned and emailed documents, instructed Bishop on how to use Adobe Acrobat, drove over ten miles to meet Bishop, went out of town to visit his mother, and cared for Ann Waddell on a daily basis.

## H.    District Court Grants Summary Judgment to Ann Waddell and Bishop

On July 6, 2016, the district court entered an order granting summary judgment to Ann Waddell and conservator Bishop. The district court first

14

determined that both Plans were governed by ERISA.[3]  The district court next

determined that, because the Plans plainly conferred discretionary authority on

MetLife, it would review MetLife's decision to deny Devin Waddell's claim for

benefits under this Circuit's multi-step ERISA framework and not under a de novo

standard of review.

Under this deferential ERISA standard of review, and looking only to the

facts known to MetLife at the time it made its decision, the district court found that

MetLife's decision to deny Devin Waddell benefits was "not 'wrong' and must be

affirmed."[4]  The district court determined that the "policies clearly require that

---

[3]As Devin Waddell points out in his brief on appeal, MetLife did state in its April 3, 2014 letter that the Term Plan was "non ERISA coverage."  However, this understanding is belied by the plain terms of the Term Plan and, moreover, it is evident from the record that MetLife exercised its discretion in interpreting the language of the Term Plan and determining that Ann Waddell was due to be paid the benefits as the first-in-line relative.  In any event, even if the Term Plan is not governed by ERISA, the district court determined that it would grant summary judgment to Ann Waddell and conservator Bishop even under a non-ERISA de novo standard of review.

[4]This Circuit has developed a multi-step framework to guide courts in reviewing a plan administrator's benefits decisions under ERISA:

(1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

15

Lanier Waddell [as the insured] 'return' or 'file' the Forms" and that Lanier Waddell did not do so. The district court acknowledged that, had Lanier Waddell asked someone else to send the forms for him, that might have been sufficient. However, the policies required that Lanier Waddell intend to return the forms, even if acting through a third person. There was no evidence that Lanier Waddell requested that anyone (including attorney Morris or Devin Waddell) send the forms to MetLife on his behalf and no indication in the administrative record that Lanier Waddell intended to return the forms. As the district court posited, "Lanier Waddell could have signed the Forms and then changed his mind and decided not to send them and actually effectuate the changes. There is no evidence that Lanier Waddell intended to take that last step to change the beneficiary." Therefore, under the first prong of ERISA review, the district court concluded that "MetLife's

---

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

Blankenship v. Metro. Life Ins. Co., 644 F.3d 1350, 1355 (11th Cir. 2011). Additionally, "[r]eview of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." Id. at 1354.

16

decision to deny benefits to Devin Waddell was supported by substantial evidence in the record and was not 'wrong.'"

The district court then went one step further and determined that, even under a de novo standard of review and taking into account evidence outside the administrative record, the record did not "establish that Lanier Waddell returned or even intended to return the Forms to MetLife." The district court pointed out that no one—not Devin Waddell, Tharpe, or Davis—actually witnessed Lanier Waddell attempting to send the forms. As the district court put it: "The fact that Davis 'got the impression he had faxed them' is a far cry from Davis' witnessing Lanier Waddell's faxing the Forms." Further, there was no evidence in the record that Lanier Waddell was ill, incapacitated, or otherwise incapable of sending the forms to MetLife. On the contrary, according to Bishop, Waddell was capable and able-bodied up until the time of his sudden death. Thus, the district court determined that "Lanier Waddell did not send the Forms to MetLife even though he had the opportunity and capability of doing so. Lanier Waddell did not ask anyone else to send the Forms before he died."

The district court next addressed Devin Waddell's argument of "substantial compliance"—that "MetLife has no right to demand strict compliance with the policies' requirements for changing beneficiaries since an interpleader is an equitable remedy." While correctly noting that this Circuit has not adopted the

17

substantial compliance doctrine in the context of ERISA,[5] the district court found that, if it did apply, "Lanier Waddell did not substantially comply with the change of beneficiary provisions" for two reasons.[6] First, the record did not necessarily indicate that Lanier Waddell intended to make Devin Waddell his sole beneficiary, as his Will and the RLT meant to pass all property to Devin Waddell <u>and</u> Leisa Hardage. Second, even if Lanier Waddell obtained the beneficiary forms and signed them on December 12, 2013, "there is no evidence of Lanier Waddell's having undertaken the required 'positive action' of returning the Forms." On this

---

[5]Neither the district court nor the parties raised the issue of whether the substantial compliance doctrine is still viable after the Supreme Court's decision in <u>Kennedy v. Plan Administrator for DuPont Savings and Investment Plan</u>, 555 U.S. 285, 129 S. Ct. 865 (2009). <u>Kennedy</u> involved a conflict between a form designating the decedent's then-wife as the beneficiary of his company-sponsored savings and investment plan (the "SIP") and a later divorce decree that divested her of any claim or right to the SIP benefits. 555 U.S. at 289-90, 129 S. Ct. at 868-69. The Supreme Court held that the plan administrator properly disregarded the waiver in the divorce decree "owing to its conflict with the designation made by the former husband in accordance with the plan documents." <u>Id.</u> at 288, 129 S. Ct. at 868. The <u>Kennedy</u> Court explained that "by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent" because allowing any less-certain rules would force plan administrators to "examine a multitude of external documents that might purport to affect the dispensation of benefits, and be drawn into litigation like this over the meaning and enforceability of purported waivers." <u>Id.</u> at 301, S. Ct. at 875-76 (citation omitted) (internal quotation marks omitted).

This Court has not addressed whether, post-<u>Kennedy</u>, a court may apply the federal common law substantial compliance doctrine in ERISA beneficiary designation cases. We need not decide that issue today, however, because even assuming <u>arguendo</u> that we may apply the doctrine here, we agree with the district court that Lanier Waddell did not substantially comply with the Plans' change-of-beneficiary requirements.

[6]The district court, for the purposes of its order, adopted the Fourth Circuit's formulation of the federal common law substantial compliance doctrine, which requires that the insured (1) evidence his intent to make the change and (2) attempt to effectuate the change "by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions in the policy." <u>See</u> <u>Phoenix Mut. Life Ins. Co. v. Adams</u>, 30 F.3d 554, 564 (4th Cir. 1994).

18

point, and relying on a Sixth Circuit decision, the district court determined that, although Lanier Waddell may have taken steps toward changing the beneficiary, he did not do "all that he reasonably could have done" to successfully send them to MetLife.

Finally, the district court rejected Devin Waddell's argument that the change-of-beneficiary provisions were ambiguous, ought to be construed against MetLife, and granted MetLife an impermissible level of discretion. Accordingly, the district court granted the motions for summary judgment filed by Ann Waddell and conservator Bishop and denied Devin Waddell's motion for summary judgment.

Devin Waddell timely appealed.

## II. DISCUSSION

This Court reviews de novo a district court's grant of summary judgment, applying the same standards that governed the district court's decision. Capone v. Aetna Life Ins. Co., 592 F.3d 1189, 1194 (11th Cir. 2010). On appeal, Devin Waddell challenges the district court's judgment in favor of his stepmother and her conservator, arguing, inter alia, that the district court utilized the wrong standard of review, improperly found that the change-of-beneficiary forms that he sent to MetLife after his father's death did not meet the Plans' provisions, and erred by "failing to properly apply the federal common law of substantial compliance."

19

None of these arguments have merit.  Instead, we agree with the district court's thorough and well-reasoned decision in this case and conclude that Devin Waddell has shown no reversible error in that decision.  Indeed, MetLife, as the entity to which the Plan Administrator granted its discretionary functions, gave careful consideration to this matter and properly determined that the benefits were due and payable to Ann Waddell and conservator Bishop.  Thus, we affirm the district court's grant of summary judgment in favor of Ann Waddell and conservator Bishop.

**AFFIRMED.**